**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MICHAEL JOHN NULL and<br>WILLIAM GRANT NULL,<br>*Plaintiffs,*<br>*v.*<br>DANA NESSEL; GREGORY TOWNSEND;<br>WILLIAM ROLLSTIN;<br>KARL SCHMITZ; BRIAN RUSSELL;<br>MICHAEL TEACHOUT; MICHAEL FINK;<br>DARREN GREEN; SCOTT McMANUS;<br>MICHIGAN STATE POLICE;<br>MICHIGAN STATE POLICE DOES 1–20;<br>RICHARD J. TRASK, II; STEVEN D'ANTUONO;<br>TODD REINECK; JOSH P. HAUXHURST;<br>HENRIK IMPOLA; JAYSON CHAMBERS;<br>MIKE HARRIS; MARK SCHWEERS; TIMOTHY<br>BATES a/k/a "RED"; FBI DOES 1–20;<br>VILLAGE OF ELK RAPIDS;<br>ELK RAPIDS POLICE DEPARTMENT;<br>and DAVID CENTALA,<br>*Defendants.* | ) | No. ________________<br>Hon. ________________<br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

The Plaintiffs, MICHAEL JOHN NULL and WILLIAM GRANT NULL, by and through undersigned counsel, state for their Complaint against the Defendants, DANA NESSEL; GREGORY J. TOWNSEND; WILLIAM ROLLSTIN; KARL SCHMITZ; BRIAN RUSSELL; MICHAEL TEACHOUT; MICHAEL FINK; DARREN GREEN; SCOTT McMANUS; MICHIGAN STATE POLICE; RICHARD J. TRASK, II; STEVEN D'ANTUONO; TODD REINECK; JOSH P. HAUXHURST; HENRIK IMPOLA; JAYSON CHAMBERS; MIKE HARRIS; MARK SCHWEERS; TIMOTHY BATES a/k/a "RED"; VILLAGE OF ELK RAPIDS; ELK RAPIDS POLICE DEPARTMENT; and DAVID CENTALA; and as-yet UNKNOWN

OFFICERS OF THE MICHIGAN STATE POLICE, AND FEDERAL BUREAU OF INVESTIGATIONS, state as follows:

**INTRODUCTION**

1. Plaintiffs, Michael Null and William Null, were acquitted at jury trial of all counts, providing material support for terrorist acts, MCL 750.543(k), and felony-firearm, MCL 750.227(b), on September 15, 2023.

2. Upon dismissal from the courtroom, a juror apologized to Plaintiffs for "what the government had put them through." (Exhibit A.)

3. Unfortunately, the Plaintiffs were not able to restore their lives and business following the acquittal.

4. Immediately following the jury verdict, AG Nessel continued the government's unwarranted attacks on Plaintiffs. Nessel announced, the "verdicts are not what we hoped for" and doubled down that she had "great evidence" but the "very right-leaning jurors were not so concerned about the kidnapping and assassination of the governor." (Exhibit B; UpNorthLive / AP, Sept. 15–18, 2023.)

5. Governor Whitmer's staff joined the AG's post-acquittal attack. Chief of Staff JoAnne Huls called the acquittal "disappointing" and warned that it would "encourage and embolden radical extremists trying to sow discord and harm public officials or law enforcement." (Exhibit __; AP, Sept. 15, 2023.)

6. The Plaintiffs' trial revealed that each government accusation against Plaintiffs was drummed up by FBI agent Henrik Impola, and his paid confidential informants, and many other agents and officers.

7. At trial, the evidence showed that the confidential informants, controlled by Impola and government handlers, were paid by the government $30,000 to $40,000 each to manufacture a case against Michael and William Null. (Exhibit *).

8. The federal and state government collectively pursued Michael and William Null from approximately 2018-2020, and the Plaintiffs were charged on October 7, 2020.

9. In 2022, President Donald Trump remarked that the charges against the Plaintiffs were a "fake deal" and a "railroad job" orchestrated by his own FBI during his first term in office. (Exhibit __.)

10. The FBI playbook used against the Plaintiffs is not new. The same FBI division used this exact playbook just one decade prior to frame, manufacture, and entrap the Hutaree militia, charging them with seditious conspiracy, attempted use of weapons of mass destruction, teaching the use of explosive materials, and possessing a firearm during a crime of violence. *United States v. Stone*, No. 2:10-cr-20123 (E.D. Mich.).

11. In *Stone*, just like Plaintiffs' case, the FBI used the identical scheme that included lavish payments to confidential informants to record the Hutaree militia. The defense argued that it was the paid informants planning and conspiring illegal activity.

12. Judge Victoria Roberts dismissed the conspiracy and sedition charges, stating "this is one of those times that the court is limited by what inferences and reason will allow it to draw." *United States v. Stone*, No. 2:10-cr-20123 (E.D. Mich. Mar. 27, 2012) (Roberts, J.) (Rule 29 order of acquittal).

13. Then ten years later, the playbook was dusted off and the same division in the FBI was at it again.

14. Like with Hutaree, the federal and state officers in Plaintiffs' case used confidential human sources and undercover employees who originated, funded, transported, scheduled, recorded, and plotted a supposed scheme. This time the FBI set up a plot attempting to frame Plaintiffs alleging they were planning to kidnap the Governor of Michigan.

15. But the plot and plan all along with was FBI's and its paid informants. The jury rejected the government's "evidence" and acquitted Plaintiffs, and gave them hugs acknowledging the fake plot framed by the government.

16. It was clear to the jury from trial that the Michigan Liberty Militia, and Plaintiffs, were good law abiding people. Testimony demonstrated that Plaintiffs frequently volunteered and delivering food to the needy, water to the people in Flint, as well as many other good deeds in the community.

17. The only terrorists in the courtroom were the government, pursuing a frame against the Plaintiffs. AG Nessel's administration has lost the important cases, and failed to get justice for the people of Flint. Rather, she spent her time in office with an agenda.

18. On October 7, 2020, Plaintiffs were arrested at their homes in Plainwell and Shelbyville and taken to a casino where the government attempted to interrogate them.

19. Plaintiff Michael Null informed police that his minor 13 year old daughter, M.R.N., was alone at home.

20. The government went to Michael Null's home to execute the search warrant, and pulled a gun on M.R.N. when she attempted to put her cell phone in her pocket. M.R.N. was handcuffed and detained for hours while police searched Michael Null's home.

21. Plaintiff William Null informed police that his minor children, ages 13 and 16, were at home with his elderly father.

22. While Plaintiffs were in custody, and detained, the government went to William Null's home, and again drew their guns on grandpa, who is hard of hearing, for not walking fast enough in their direction. The police shouted they would "put him down like a dog" if he did not comply.

23. Plaintiffs' minor children were handcuffed for hours during the search. An aunt arrived to remove the children from the premises, and the police required her to leave because "no minors were on site."

24. During the search of Plaintiffs' homes, the government caused as much damage as possible. It certainly appeared unnecessary and intelntional. Doors were kicked in, drywall was removed, a car was run over by the government's mine-resistant ambush-protected vehicle, MRAP, causing $18,000.00 in damage to Plaintiff's car.

25. Plaintiffs are concealed pistol license holders and all of their guns were removed at the time of the initial search. Police left Plaintiff's wife's guns in what appeared to be a bizarre set up. Michael Null's wife's two handguns were strategically stashed in dressers in a concealed fashion as if the police were going to attempt to return for a search and allege a bond violation if Plaintiffs were released from custody.

26. Plaintiffs, construction workers, lost significant business while their case was pending, and their business, Null Building and Remodeling, was destroyed by the brand "domestic terrorist."

27. The government's post-acquittal national media statements are not advocacy. The continued press attacks on Plaintiffs by the government undermines the public trust in the judicial process, and convey to the public that the government, with its power, still pursues and labels Plaintiffs as terrorists.

## 28. JURISDICTION AND VENUE

29. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

30. Plaintiff's were acquitted by jury on September 15, 2023. This action is brought pursuant to 42 U.S.C. * 1983, 42 USC *1988, Bivens v Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and Michigan law to redress the Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the United States Constitution.

31. This Court has jurisdiction for Plaintiff's federal claims pursuant to 28 U.S.C. *1331 and supplemental jurisdiction for their state-law claims pursuant to 28 U.S.C. *1367 because they arise from the same investigation, searches, arrests, detention, prosecution, and post-acquittal publications as the federal claims.

32. Venue is proper under 28 U.S.C. * 1391(b). Plaintiffs reside in this judicial district. In addition, Plaintiffs' criminal case investigation included this district, and Plaintiffs were tried, and substantial parts of the events and omissions giving rise to Plaintiffs' claims occurred within this judicial district. The Northern Division is the proper division. The Plaintiff's were charged and tried in Antrim County, Michigan.

## 33. PARTIES

34. Plaintiff Michael John Null is a United States citizen and a resident of Plainwell, Allegan County, Michigan. At the time of the October 7, 2020 search and arrest, he resided at 801 109th Street, Plainwell, Michigan.

35. Plaintiff William Grant Null is a United States citizen and a resident of Shelbyville, Allegan County, Michigan. At the time of the October 7, 2020 search and arrest, he resided at 12910 9 Mile Road, Shelbyville, Michigan.

36. At all relevant times, Defendant STEVEN D'ANTUONO was an employee of the Federal Bureau of Investigation. D'ANTUONO served as Special Agent in Charge of the FBI Detroit Field Office at the time of arrests on October 7, 2020. Plaintiffs bring this lawsuit against Defendant D'ANTUONO in his individual capacity.

37. At all relevant times, Defendant HENRIK IMPOLA was an employee of the Federal Bureau of Investigations. IMPOLA served as Special Agent, and oversaw the investigation, served as handler for the paid and unpaid informants, and testified at Plaintiffs' trial. Plaintiffs bring this lawsuit against Defendant IMPOLA in his individual capacity.

38. At all relevant times, Defendant MIKE FINK was an employee of the Michigan State Police. FINK served as Detective Sergeant, and investigated Plaintiffs by coordinating with the FBI using the Joint Terrorism Task Force, and drafted and swore charging affidavit and documents. Plaintiffs bring this lawsuit against Defendant FINK in his individual capacity.

39. At all relevant times, Defendant MIKE HARRIS was an employee of the Michigan State Police. HARRIS served as Detective First Lieutenant and investigated Plaintiffs by coordinating with the FBI using the Joint Terrorism Task Force, and authorized charging affidavit and documents. Plaintiffs bring this lawsuit against Defendant HARRIS in his individual capacity.

40. At all relevant times, Defendant MARK SCHWEERS a/k/a "Mark Woods" was an employee of the Federal Bureau of Investigations. SCHWEERS served as Special Agent,

undercover for the FBI., AND he wore a wire to secretly record Plaintiffs. Plaintiffs bring this lawsuit against Defendant SCHWEERS in his individual capacity.

41. At all relevant times, Defendant TIMOTHY BATES a/k/a “Red” was an employee of the Federal Bureau of Investigations. BATES served as undercover Special Agent. BATES acted as a fake explosives expert. Plaintiffs bring this lawsuit against Defendant BATES in his individual capacity.

42. At all relevant times, Defendant DANA NESSEL was the Attorney General of the State of Michigan. NESSEL directed the state investigation and charging of Plaintiffs, and after the September 15, 2023 acquittals published extra-prosecutorial statements branding Plaintiffs as participants in a kidnapping and assassination plot. Plaintiffs bring this lawsuit against Defendant NESSEL in her individual capacity, and in her official capacity solely for prospective declaratory and injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908).

43. At all relevant times, Defendant GREGORY J. TOWNSEND, P35857, was an Assistant Attorney General of the State of Michigan. TOWNSEND authorized the October 7, 2020 felony warrant against Michael John Null, was designated “prosecution to be handled by” on that warrant, and signed the felony Information filed in the name of Attorney General Dana Nessel (CTN 96-20900970-01; AG ORI MI820025A). Plaintiffs bring this lawsuit against Defendant TOWNSEND in his individual capacity, and in his official capacity solely for prospective declaratory and injunctive relief.

44. At all relevant times, Defendant WILLIAM ROLLSTIN was an Assistant Attorney General of the State of Michigan. ROLLSTIN served as lead trial prosecutor in the Antrim County prosecution of Plaintiffs. Plaintiffs bring this lawsuit against Defendant

ROLLSTIN in his individual capacity, and in his official capacity solely for prospective declaratory and injunctive relief.

45. At all relevant times, Defendant KARL SCHMITZ was an employee of the Michigan State Police assigned to the FBI as a Task Force Officer. SCHMITZ served as Detective Sergeant, serialized FBI Case ID 266T-DE-3322308 documenting the October 7, 2020 search of Michael Null’s home, and swore the August 2022 device-search affidavits under MSP incident 10-314-20. Plaintiffs bring this lawsuit against Defendant SCHMITZ in his individual capacity.

46. At all relevant times, Defendant BRIAN RUSSELL was an employee of the Michigan State Police assigned to MSP Jackson Post. RUSSELL served as Detective Sergeant and Officer in Charge of MSP incident 10-314-20, requested CCU forensic extraction of Plaintiffs’ devices, and delivered those devices to CCU-Lansing. Plaintiffs bring this lawsuit against Defendant RUSSELL in his individual capacity.

47. At all relevant times, Defendant MICHAEL TEACHOUT, badge 117, was an employee of the Michigan State Police assigned to the Computer Crimes Unit–Lansing. TEACHOUT served as Detective Sergeant and extracted data from devices seized under MSP incident 10-314-20 using GrayKey and Magnet AXIOM. Plaintiffs bring this lawsuit against Defendant TEACHOUT in his individual capacity.

48. At all relevant times, Defendant DARREN GREEN was an employee of the Michigan State Police. GREEN served as Captain and/or Lieutenant, was involved in Capitol security on April 30, 2020, and later testified in the Antrim County prosecution. Plaintiffs bring this lawsuit against Defendant GREEN in his individual capacity.

49. At all relevant times, Defendant SCOTT McMANUS was an employee of the Michigan State Police. McMANUS served as Sergeant and head of the Governor's security detail, and coordinated with FBI personnel regarding the so-called reconnaissance trips to the Governor's Elk Rapids property, including the trip involving Plaintiffs. Plaintiffs bring this lawsuit against Defendant McMANUS in his individual capacity.

50. Defendant MICHIGAN STATE POLICE is a department of the State of Michigan. Plaintiffs do not seek damages against the Michigan State Police as a § 1983 "person." Plaintiffs name the Michigan State Police solely for prospective declaratory and injunctive relief.

51. Defendants MICHIGAN STATE POLICE DOES 1–20 are presently unidentified troopers, team leaders, affiants, supervisors, tactical-team members, CCU personnel, and task-force officers who personally planned, approved, swore, or executed the October 7, 2020 searches and arrests at Plaintiffs' residences, or who supplied facts used to obtain warrants or charges. Their names will be substituted when ascertained. Discovery already identifies CCU authors whose operational roles will be matched to acts: Trooper Evan Mize; D/Sgt. Gordon Armstrong; D/Sgt. Thomas E. Gladney; D/Tpr. Specialist Kenneth Weismiller; and analysts Craig Baumgartner and Danielle Vandenheuvel.

52. At all relevant times, Defendant RICHARD J. TRASK, II was an employee of the Federal Bureau of Investigations. TRASK served as Special Agent and swore the federal complaint affidavit in *United States v. Fox*, No. 1:20-mj-416 (W.D. Mich.), describing the informant-and-undercover structure later used against Plaintiffs. Plaintiffs bring this lawsuit against Defendant TRASK in his individual capacity.

53. At all relevant times, Defendant TODD REINECK was an employee of the Federal Bureau of Investigations. REINECK served as Special Agent on the investigation into which Plaintiffs were layered. Plaintiffs bring this lawsuit against Defendant REINECK in his individual capacity.

54. At all relevant times, Defendant JOSH P. HAUXHURST was an employee of the Federal Bureau of Investigations. HAUXHURST served as Assistant Special Agent in Charge of the FBI Detroit Field Office and appeared at the October 8, 2020 announcement of the arrests. Plaintiffs bring this lawsuit against Defendant HAUXHURST in his individual capacity.

55. At all relevant times, Defendant JAYSON CHAMBERS was an employee of the Federal Bureau of Investigations. CHAMBERS served as Special Agent and handler, including as handler for paid sources used in the investigation, and participated in the December 10, 2020 recorded session with Stephen Robeson. Plaintiffs bring this lawsuit against Defendant CHAMBERS in his individual capacity.

56. Defendants FBI DOES 1–20 are presently unidentified FBI agents, handlers, supervisors, and task-force members who personally directed source or undercover activity involving Plaintiffs or who supplied facts used in the state warrants, raids, charges, or trial narrative. Their names will be substituted when ascertained.

57. At all relevant times, Defendant DAVID CENTALA was Chief of Police of Elk Rapids. CENTALA participated in local response and in the surveillance or "reconnaissance" narrative later used against Plaintiffs, and testified in the Antrim County trial. Plaintiffs bring this lawsuit against Defendant CENTALA in his individual capacity and in his official capacity.

58. Defendant VILLAGE OF ELK RAPIDS is a Michigan municipal corporation. The Village employed Chief Centala and participated, through its policymakers and officers, in the joint investigation and "reconnaissance" narrative around the Governor's property.

59. Defendant ELK RAPIDS POLICE DEPARTMENT participated in local investigative and "reconnaissance" activity around the Governor's property. Municipal claims are pleaded against the Village and against Centala in his official capacity to the extent the Department is not separately suable.

60. Any other unnamed defendant whose identity is revealed in discovery and who personally participated in the investigation, raid, arrest, detention, charging, bind-over, or trial of Plaintiffs will be added by amendment. Plaintiffs do not sue any sitting or former judge or magistrate.

## 61. FACTUAL ALLEGATIONS

62. ***Manufactured plot by a "Double agent" Informant***

63. Special Agents Henrik Impola and Jayson Chambers were confidential informant, Steve Robeson's "handlers." Robeson secretly recorded Plaintiff William Null, and acted as the architect of the plot using government funding by organizing the meetings, and planning and paying for hotel rooms and gather Plaintiffs and others. Robeson procured and produced weapons, including a drone, and encouraged use in his manufactured plot. When the Plaintiffs and others sought testimony of Robeson to demonstrate in court that he was the actual architect of the plot, and had credibility problems, the government changed it position to prevent the testimony of Robeson. Suddenly the government was referring to Robeson as a "Double Agent" and prosecuted Robeson for Felon in

Possession of a Firearm, prompting Robeson to assert his 5th Amendment Rights to evade testifying at trial in Plaintiffs and others cases. Agents accused Robeson of deleting and destroying recorded files and "playing both sides." Plaintiffs assert that Robeson deleted or destroyed recordings demonstrating unwillingness to act unlawfully.

64. The government's own paper in *United States v. Fox*, No. 1:20-cr-183 (W.D. Mich.), ECF 398-1, is not a newspaper story. It recites FBI Bates 00179893 and 00179894: Robeson was a confidential human source from October 20, 2019 until October 27, 2020. The Bureau paid him $19,328.79. That money bought the Dublin, Ohio gathering on June 6, 2020, the Cambria, Wisconsin field training on July 10–12, 2020, and pizza, moonshine, and hotel rooms in Peebles, Ohio on July 18, 2020. William Null was in Dublin because Robeson put him there. Both brothers were in Wisconsin because Robeson opened that door. Impola monitored Wisconsin in real time. After the October raids, Impola and Chambers sat Robeson down for hours. They talked an NDA. They talked keeping him off a witness list. They talked leverage. Then they prosecuted him in *United States v. Robeson*, No. 3:21-cr-00024 (W.D. Wis.), asked for probation, and told the Fox court he was too dirty to put on a stand. That is not how you treat a witness you trust. That is how you hide the man who built the file.

65. Special Agents Henrik Impola and Jayson Chambers were confidential informant, Dan Chappel's "handlers." Chappel manufactured evidence against Plaintiffs by secretly recording them and ordering a vehicle that had Plaintiffs in it as passengers to be declared a "lookout" vehicle. Impola conceded during Plaintiffs trial that his unofficial motto at the office is "Don't let the facts get in the way of a good story."

## CLAIMS FOR RELIEF

**COUNT I – BIVENS CLAIMS AGAINST ALL FEDERAL DEFENDANTS**

66. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

67. Defendants FBI SPECIAL AGENT RICHARD J. TRASK, II; FBI SPECIAL AGENT AND/OR OFFICIAL STEVEN D'ANTUONO; FBI SPECIAL AGENT AND/OR OFFICIAL TODD REINECK; FBI ASSISTANT SPECIAL AGENT AND/OR OFFICIAL JOSH P. HAUXHURST; FBI SPECIAL AGENT AND/OR OFFICIAL HENRIK IMPOLA; FBI SPECIAL AGENT AND/OR OFFICIAL JAYSON CHAMBERS; FBI SPECIAL AGENT AND/OR OFFICIAL AND/OR INFORMANT "RED;" FBI SPECIAL AGENT AND/OR OFFICIAL FBI SPECIAL AGENT AND/OR OFFICIAL; FAOI #1; FAOI #2; FAOI #3; and etc., (the Federal Defendants) were acting in their individual capacities when they formulated a plan to orchestrate and execute a scheme to violate Plaintiffs' fundamental constitutional rights by framing them, wrongfully arresting them, wrongfully and falsely imprisoning them, and maliciously prosecuting them to an extent that caused physical, mental, emotional, and economic damages.

68. The Federal Defendants personally and actively participated in the alleged violations of Plaintiffs' clearly established rights secured by the U.S. Constitution, including, but not limited, to the following.

**Violation of the Second Amendment (Bivens Claims)**

69. Due to the felony charges and prosecutions, Plaintiffs Michael and William Null were deprived of their right to bear arms from the date of their arrest on October 7, 2020 to their acquittal on September 15, 2023 due to the orchestrated conspiracy to unlawfully and wrongfully frame them, to wrongfully charge them with felony crimes, to falsely and unlawfully detain them, and to maliciously prosecute them.

70. As a direct and proximate result of Defendants' conduct, Plaintiff suffered actual harm (physical, emotional, mental and/or economic) leading to medical expenses, lost wages, pain and suffering, and punitive damages.

71. Plaintiffs seek compensatory and punitive damages against Defendants in their individual capacity.

**Violation of the Fourth Amendment (Bivens Claims)**

72. On or about October 7, 2020, the Federal Defendants, without probable cause, caused and executed the arrest of the Plaintiffs, entered their residences, and conducted a search, and seized Plaintiffs' property, papers, and effects.

73. From November 2019 to September 15, 2023, the Federal Defendants, by invasion of privacy in their papers and effects by the conducting of unlawful surveillance and recordings and the seizure of their property, papers, and effects; by the conducting without probable cause of unreasonable searches and seizures; by use of excessive force in the execution of such unreasonable searches and seizures leading to physical, mental, emotional harm and destruction of property; wrongful arrest; by unlawful detention; and wrongful and false imprisonment based on the pre-planned, orchestrated

conspiracy to frame Plaintiffs, Michael John Null and William Grant Null, and to charge them with felony crimes.

74. The Federal Defendants' actions and conduct, individually and collectively, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures and to be secure in his papers and effects.

75. As a direct and proximate result of Defendants' conduct, Plaintiff suffered actual harm (physical, emotional, mental and/or economic) leading to medical expenses, lost wages, pain and suffering, and punitive damages.

76. Plaintiffs seek compensatory and punitive damages against Defendants in their individual capacity.

**Violation of the Fifth Amendment (Bivens Claims)**

77. On or about November 1, 2019 to and through September 15, 2023, the Federal Defendants orchestrated and commenced to execute a plot to initiate and continue criminal proceedings to prosecute Plaintiffs, Michael and William Null without probable cause and in bad faith and without due process.

78. The Federal Defendants knowingly and intentionally caused Plaintiffs to be arrested, detained, and prosecuted without probable cause by fabricating evidence and making materially false statements to federal prosecutors.

79. The Federal Defendants initiated the proceedings with malice, recklessness, and grossly negligent conduct for purposes other than bringing Plaintiffs to justice.

80. On or about September 15, 2023, the prosecution was terminated in Plaintiffs' favor.

81. The Federal Defendants conspired to wrongfully and maliciously cause criminal charges to be brought against Plaintiffs without probable cause, and continued such prosecution despite knowing the charges were baseless.

82. The Federal Defendants' actions were undertaken with malice and for purposes unrelated to the fair administration of justice.

83. As a result, Plaintiffs were deprived of liberty through arrest, detention, and prosecution, all in violation of their constitutional right under the Fifth Amendment not to be deprived of liberty without due process of law.

84. The wrongful proceedings were ultimately resolved in Plaintiffs' favor.

85. However, as a result of the Federal Defendants' wrongful actions and conduct, and based on false allegations and fabricated evidence and collusion, Plaintiffs were unlawfully deprived of their liberty by being detained, incarcerated, or otherwise restrained without lawful justification.

86. Said incarceration, detention, and/or restraint resulted from fabricated evidence, suppression of exculpatory material, and/or malicious conduct by the Federal Defendants.

87. This conduct violated the plaintiff's right not to be deprived of liberty without due process of law.

88. The criminal proceedings terminated in Plaintiffs' favor on September 15, 2023, when an acquittal was entered on the record.

89. Defendants' actions violated Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution to receive just and due process.

90. As a result of the Federal Defendants actions and conduct, Plaintiffs were wrongfully imprisoned, forced to endure criminal proceedings, and suffered loss of liberty, humiliation, emotional distress, reputational harm, lost wages, and substantial legal expenses.

91. The Federal Defendants' conduct deprived Plaintiff of liberty without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

92. The Federal Defendants acted willfully, maliciously, and with reckless disregard for the Plaintiffs' constitutional rights.

93. As a direct and proximate result of the Federal Defendants' conduct, Plaintiffs suffered actual harm (physical, emotional, mental and/or economic) leading to medical expenses, lost wages, pain and suffering, and punitive damages.

94. Plaintiffs seek compensatory and punitive damages against Defendants in their individual capacity.

**Violation of the Eighth Amendment (Bivens Claims)**

95. The Federal Defendants were, at all relevant times, federal law enforcement officers acting in their individual capacity.

96. The Federal Defendants knowingly and intentionally caused Plaintiffs to be arrested, detained, and prosecuted without probable cause by fabricating evidence and making materially false statements to federal prosecutors.

97. The Federal Defendants initiated the proceedings with malice, recklessness, and grossly negligent conduct for purposes other than bringing Plaintiffs to justice.

98. As a result of the Federal Defendants' Plaintiffs were unlawfully detained and incarcerated.

99. Plaintiffs Michael Null and William Null were arrested on October 7, 2020 and released on December 3, 2020; placed on house arrest until mid-April of 2021, and then forced to wear a tether until their acquittal in September of 2023.

100. The Federal Defendants used excessive and unjustified force against Plaintiffs and unlawfully confined them, and restricted their liberty, and with deliberate indifference, they inflicted inflicting unnecessary pain and injury, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

101. The Federal Defendant's actions were willful, malicious, deliberately indifferent, and in reckless disregard of Plaintiffs' constitutional rights to be free from cruel and unusual punishment.

102. As a result of the Federal Defendants' actions, Plaintiffs were wrongfully imprisoned and forced to endure criminal proceedings, suffering the loss of liberty, humiliation, emotional distress, reputational harm, lost wages, and substantial legal expenses.

103. WHEREFORE, Plaintiff respectfully requests that judgment be entered in Plaintiff's favor and against Defendants, jointly and severally, awarding compensatory and punitive damages, attorneys' fees and costs pursuant, and such other and further relief as the Court deems just and proper.

## COUNT II – VIOLATION OF CIVIL RIGHTS ACT AGAINST ALL STATE ACTORS

104. Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

105. Defendants, Michigan Attorney General Dana Nessel; Michigan Assistant Attorney General Gregory Townsend; Michigan Assistant Attorney General Sunitha Doddamani; Michigan Assistant Attorney General William Rollstin; The Michigan State Police; Michigan State Police Agent or Officer (MSPO) CAPTAIN DARREN GREEN; MSPO SARGENT SCOTT MCMANUS; MSPO #1; MSPO #2; MSPO #3; and, etc., (the State Defendants) at all relevant times, acted under color of state law and within the scope of their official duties as law enforcement officers / correctional officers / prosecutors / or other state actors.

106. Under 42 U.S.C. § 1983, a state actor who violates or deprives the constitutional rights of an individual can be liable for injuries caused by said violation.

107. By their conduct, the State Defendants acting under color of state law and authority, deprived Plaintiffs of rights secured by the Constitution and laws of the United States, including, but not limited to, the following.

**Violation of the Second Amendment**

108. Due to the felony charges and prosecutions, Plaintiffs Michael and William Null were deprived of their right to bear arms from the date of their arrest on October 7, 2020 to their acquittal on September 15, 2023 due to the orchestrated conspiracy to unlawfully and wrongfully frame them, to wrongfully charge them with felony crimes, to falsely and unlawfully detain them, and to maliciously prosecute them.

109. As a direct and proximate result of the State Defendants' conduct, Plaintiff suffered actual harm (physical, emotional, mental and/or economic) leading to medical expenses, lost wages, pain and suffering, and punitive damages.

110. Plaintiffs seek compensatory and punitive damages against Defendants in their individual capacity.

**Violation of the Fourth Amendment**

111. On or about October 7, 2020, the State Defendants, without probable cause, caused and executed the arrest of the Plaintiffs, entered their residences, and conducted a search, and seized Plaintiffs' property, papers, and effects.

112. From November 2019 to September 15, 2023, the State Defendants, by invasion of privacy in their papers and effects by the conducting of unlawful surveillance and recordings and the seizure of their property, papers, and effects; by the conducting without probable cause of unreasonable searches and seizures; by use of excessive force in the execution of such unreasonable searches and seizures leading to physical, mental, emotional harm and destruction of property; wrongful arrest; by unlawful detention; and wrongful and false imprisonment based on the pre-planned, orchestrated conspiracy to frame Plaintiffs, Michael John Null and William Grant Null and to charge them with felony crimes.

113. The State Defendants' actions and conduct, individually and collectively, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures and to be secure in his papers and effects.

114. As a direct and proximate result of the State Defendants' conduct, Plaintiff suffered actual harm (physical, emotional, mental and/or economic) leading to medical expenses, lost wages, pain and suffering, and punitive damages.

115. Plaintiffs seek compensatory and punitive damages against the State Defendants in their individual capacity.

**Violation of the Fifth Amendment**

116. On or about November 1, 2019 to and through September 15, 2023, the Federal Defendants orchestrated and commenced to execute a plot to initiate and continue criminal proceedings to prosecute Plaintiffs, Michael and William Null without probable cause and in bad faith and without due process.

117. The Federal Defendants knowingly and intentionally caused Plaintiffs to be arrested, detained, and prosecuted without probable cause by fabricating evidence and making materially false statements to federal prosecutors.

118. The Federal Defendants initiated the proceedings with malice, recklessness, and grossly negligent conduct for purposes other than bringing Plaintiffs to justice.

119. On or about September 15, 2023, the prosecution was terminated in Plaintiffs' favor.

120. The Federal Defendants conspired to wrongfully and maliciously cause criminal charges to be brought against Plaintiffs without probable cause, and continued such prosecution despite knowing the charges were baseless.

121. The Federal Defendants' actions were undertaken with malice and for purposes unrelated to the fair administration of justice.

122. As a result, Plaintiffs were deprived of liberty through arrest, detention, and prosecution, all in violation of their constitutional right under the Fifth Amendment not to be deprived of liberty without due process of law.

123. The wrongful proceedings were ultimately resolved in Plaintiffs' favor.

124. However, as a result of the Federal Defendants' wrongful actions and conduct, and based on false allegations and fabricated evidence and collusion, Plaintiffs were unlawfully deprived of their liberty by being detained, incarcerated, or otherwise restrained without lawful justification.

125. Said incarceration, detention, and/or restraint resulted from fabricated evidence, suppression of exculpatory material, and/or malicious conduct by the Federal Defendants.

126. This conduct violated the plaintiff's right not to be deprived of liberty without due process of law.

127. The criminal proceedings terminated in Plaintiffs' favor on September 15, 2023, when an acquittal was entered on the record.

128. Defendants' actions violated Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution to receive just and due process.

129. As a result of the Federal Defendants actions and conduct, Plaintiffs were wrongfully imprisoned, forced to endure criminal proceedings, and suffered loss of liberty, humiliation, emotional distress, reputational harm, lost wages, and substantial legal expenses.

130. The Federal Defendants' conduct deprived Plaintiff of liberty without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

131. The Federal Defendants acted willfully, maliciously, and with reckless disregard for the Plaintiffs' constitutional rights.

132. As a direct and proximate result of the Federal Defendants' conduct, Plaintiffs suffered actual harm (physical, emotional, mental and/or economic) leading to medical expenses, lost wages, pain and suffering, and punitive damages.

133. Plaintiffs seek compensatory and punitive damages against Defendants in their individual capacity.

**Violation of the Eighth Amendment (Bivens Claims**

134. The Federal Defendants were, at all relevant times, federal law enforcement officers acting in their individual capacity.

135. The Federal Defendants knowingly and intentionally caused Plaintiffs to be arrested, detained, and prosecuted without probable cause by fabricating evidence and making materially false statements to federal prosecutors.

136. The Federal Defendants initiated the proceedings with malice, recklessness, and grossly negligent conduct for purposes other than bringing Plaintiffs to justice.

137. As a result of the Federal Defendants' Plaintiffs were unlawfully detained and incarcerated.

138. Plaintiffs Michael Null and William Null were arrested on October 7, 2020 and released on December 3, 2020; placed on house arrest until mid-April of 2021, and then forced to wear a tether until their acquittal in September of 2023.

139. The Federal Defendants used excessive and unjustified force against Plaintiffs and unlawfully confined them, and restricted their liberty, and with deliberate indifference, they inflicted inflicting unnecessary pain and injury, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

140. The Federal Defendant's actions were willful, malicious, deliberately indifferent, and in reckless disregard of Plaintiffs' constitutional rights to be free from cruel and unusual punishment.

141. As a result of the Federal Defendants' actions, Plaintiffs were wrongfully imprisoned and forced to endure criminal proceedings, suffering the loss of liberty, humiliation, emotional distress, reputational harm, lost wages, and substantial legal expenses.

142. WHEREFORE, Plaintiff respectfully requests that judgment be entered in Plaintiff's favor and against Defendants, jointly and severally, awarding compensatory and punitive damages, attorneys' fees and costs pursuant, and such other and further relief as the Court deems just and proper.

143. **Fourth Amendment** – by subjecting Plaintiff to unreasonable seizure, arrest, and/or detention without probable cause; by using excessive force; and by maliciously initiating and continuing criminal proceedings without legal justification.

144. **Fifth Amendment (as applied through the Fourteenth Amendment)** – by depriving Plaintiff of liberty without due process of law, including instituting and maintaining

criminal charges based on fabricated evidence, suppression of exculpatory material, and malicious prosecution.

145. **Eighth Amendment** – by subjecting Plaintiff, while in custody, to cruel and unusual punishment, including excessive force, deliberate indifference to serious medical needs, inhumane conditions of confinement, =.

146. **Fourteenth Amendment** – by depriving Plaintiff of liberty and property interests without substantive or procedural due process of law; by denying Plaintiff equal protection of the laws; and by wrongfully incarcerating Plaintiff following proceedings that were fundamentally unfair.

147. As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of liberty, emotional distress, physical pain and suffering, reputational harm, lost wages, and other damages to be proven at trial.

148. Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's constitutional rights, thereby entitling Plaintiff to an award of compensatory damages and punitive damages

149. WHEREFORE, Plaintiff respectfully requests that judgment be entered in Plaintiff's favor and against Defendants, jointly and severally, awarding compensatory and punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

**COUNT III – GROSS NEGLIGENCE**

150. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

151. At all times relevant, Defendants were public employees and/or agents of governmental entities acting within the scope of their employment.

152. Defendants owed Plaintiff duties of care to refrain from conduct that would cause unreasonable risk of harm, including duties to refrain from unlawful arrest, unlawful detention, excessive force, and malicious prosecution.

153. Defendants engaged in conduct so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff, including but not limited to:

a. initiating or continuing criminal charges without probable cause;

b. causing or permitting Plaintiff to be detained without legal justification;

c. fabricating or withholding material information; and

d. using unnecessary and excessive force.

154. As a direct and proximate result of Defendants' grossly negligent acts and omissions, Plaintiff suffered damages including loss of liberty, physical injury, emotional distress, reputational harm, lost wages, and other compensable injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Michael John Null and William Grant Null respectfully request that this Court enter judgment in their favor and against Defendants, DANA NESSEL; GREGORY J. TOWNSEND; WILLIAM ROLLSTIN; KARL SCHMITZ; BRIAN RUSSELL; MICHAEL TEACHOUT; MICHAEL FINK; DARREN GREEN; SCOTT McMANUS; MICHIGAN STATE POLICE; RICHARD J. TRASK, II; STEVEN D'ANTUONO; TODD REINECK; JOSH P. HAUXHURST; HENRIK IMPOLA; JAYSON CHAMBERS; MIKE HARRIS; MARK SCHWEERS; TIMOTHY BATES a/k/a "RED"; VILLAGE OF ELK RAPIDS; ELK RAPIDS POLICE DEPARTMENT; and DAVID CENTALA; and as-yet UNKNOWN OFFICERS OF THE

MICHIGAN STATE POLICE, AND FEDERAL BUREAU OF INVESTIGATIONS, awarding compensatory damages, attorneys' fees and costs against each Defendant, and because they acted willfully, wantonly, and /or maliciously, punitive damages against each of the Individual Defendants, and any other such relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs, MICHAEL JOHN NULL and WILLIAM GRANT NULL, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: September 15, 2026

Respectfully submitted,

*/s/ Stefanie Lambert*
Stefanie Lambert Junttila, P-71303
Law Office of Stefanie L. Lambert PLLC
2751 East Jefferson Ave ste. 400
Detroit MI8207
AttorneyLambert@protonmail.com
StefanieLambert.com
(313) 410-6872

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2026, I electronically filed the foregoing Complaint and Jury Demand with the Clerk of the Court for the Western District of Michigan using the CM/ECF system.

I further certify that a copy of the Complaint and Jury Demand, together with a summons issued by the Clerk, will be served upon each Defendant in the manner required by Fed. R. Civ. P. 4, including Rule 4(e) as to individual defendants, Rule 4(j) as to the State and municipal defendants, and Rule 4(i) as to the United States and any United States officer or employee sued in an individual capacity.

Proof of service will be filed after service is completed, as required by Fed. R. Civ. P. 4(l).

Dated: September 15, 2026

*/s/ Stefanie Lambert*
Stefanie Lambert Junttila, P-71303
*Attorney for Plaintiffs*